IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LONESOME PINES HOMEOWNERS ASSOCIATION, a Washington nonprofit corporation, | ) ) ) ) | No. 41170-2-III |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| WHITE WAVE MARITIME CONSULTANTS AND NAVIGATION, LLC, a Washington limited liability company, | ) ) ) ) ) ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — White Wave Consultants and Navigation LLC (White Wave) owns property near Lonesome Pines (LP), a subdivision of homes. White Wave uses Lonesome Pines Drive (LP Drive) for access to the public road. White Wave is bound by the Wapiti Way road maintenance agreement (RMA), which requires White Wave to pay road maintenance for Wapiti Way *and* for that portion of LP Drive it uses.

Lonesome Pines Homeowners Association (LPHOA) brought suit, seeking the trial court to declare White Wave bound by *LP's* RMA. By summary judgment, the trial court created an "equitable covenant" in favor of LP against White Wave for the former

to enforce its RMA.  We reverse because LPHOA fails to satisfy two of the four elements

for an equitable covenant.

## FACTS

In 1995, George Woodruff subdivided a 90-acre parcel into four lots, "Lot 4"

being by far the largest lot.  Clerk's Papers (CP) at 68.  In June 1998, Woodruff

transferred a portion of Lot 4 to Rick Graves by a boundary line adjustment.  In October

1998, with the property transferred to him, Graves recorded the approved short plat and

created the LP subdivision, comprised of 10 lots.

The plat map created LP Drive so the LP residents would have access to Lava

Road, a public road.  The map shows that LP Drive goes from Lava Road to the

subdivision's entrance (the north to south portion), and, from there, LP turns west and

abuts the 10 LP lots (the east to west portion):



CP at 70.

The LP short plat includes a notation that reads: "Road Maintenance Agreement Filed In: Auditor's File No. 1006380." CP at 70. This number corresponds to LP's recorded RMA. LP's RMA states it is binding on anyone who has an ownership interest in a property in LP's subdivision and requires "[e]ach resident party hereto" to contribute $50 annually toward maintenance of the road. CP at 76. White Wave's property is not

within LP's subdivision.  Later, LP's property owners voted to increase the annual

contribution to $300.

In 2003, Woodruff further divided Lot 4 by creating four smaller lots.  As shown

by the plat map below, the four smaller lots are east and generally south of the entrance to

LP's subdivision:



CP at 71.

The 2003 short plat also depicts a new private road, Wapiti Way.  Owners of the

smaller four lots gain access to their properties from Lava Road by using LP Drive and

4

Wapiti Way. The short plat contains a notation that reads: "Road Maintenance Agreement Filed In: Auditor's File No. 1036857." CP at 71. This number corresponds to a set of covenants recorded by Woodruff that the parties refer to as the Wapiti Way RMA.

The Wapiti Way RMA requires all current and future owners of the four smaller lots to share the maintenance expense for Wapiti Way. Importantly, it also requires those owners to "share[ ] equally with" the owners of the LP plat the "maintenance for that portion of Lonesome Pines Drive, from the entrance to the Plat of Lonesome Pines . . . north to Lava County Road." CP at 83.

In 2010, Woodruff further divided Lot 4 of the 2003 plat. This new plat absorbed a portion of Lot 4 of the 2003 plat and created four new lots. The four lots created by that subdivision are north of the entrance to LP's subdivision. A notation on the 2010 short plat reads: "Road Maintenance Agreement Filed In: Auditor's File No. 1006380." CP at 72. This number corresponds to LP's RMA.

In 2019, Woodruff adjusted and renumbered the lots he subdivided in 2010. He adjusted the boundary of Lot 4 of that subdivision and renumbered it "Lot 3." CP at 56-57. Lot 3 sits on land originally divided under the 2003 plat and later absorbed into the 2010 plat. Soon after, White Wave purchased Lot 3. White Wave's purchase closed

5

through a title company.  The title policy showed that Lot 3, by virtue of the 2003 short

plat notation, was subject to the terms of the Wapiti Way RMA, but it did not show that

Lot 3 was encumbered by LP's RMA.

*Procedure*

In 2022, LPHOA sent White Wave and others not owning property in LP a letter

asserting that their properties were bound by LP's RMA.  Eventually, White Wave sent

LPHOA a check for $1,251.36, but stopped payment before LP cashed it because White

Wave's title report had not disclosed that Lot 3 was encumbered by LP's RMA.

LPHOA brought suit against White Wave to enforce LP's RMA.  White Wave

denied that its property was encumbered by LP's RMA.  LP moved for summary

judgment, arguing that the terms of its RMA were incorporated by reference in the 2010

short plat and qualified as an enforceable restrictive covenant.  LP requested damages in

the amount of $1,551.36 for unpaid road maintenance fees and an award of attorney fees

and costs in accordance with its RMA.

In the very first paragraph of White Wave's response, it admitted it was bound by

the Wapiti Way RMA and that the Wapiti Way RMA required it to pay LP road

maintenance fees for the north to south portion of LP Drive, the portion it uses.  It

repeated this on page 7 of its response.  In addition to this, White Wave argued that LP's

RMA was not enforceable against it as a real covenant (because of the statute of frauds) or as an equitable covenant.

Following oral argument, the trial court concluded that LP's RMA was validly incorporated into the 2010 short plat, that White Wave had constructive notice because the short plat referenced LP's RMA, that LP's RMA was binding on and enforceable against White Wave as an equitable covenant, and that the statute of frauds did not provide a defense to its enforcement.

White Wave appeals.

PROCEDURE ON APPEAL

In its opening brief, White Wave argued that LP's RMA does not satisfy the statute of frauds, or, alternatively, that LP's RMA did not create an equitable covenant encumbering its property. In its reply brief, White Wave reraised the point it made to the trial court—that it is legally bound by the Wapiti Way RMA and that the Wapiti Way RMA requires it to pay LP for road maintenance for the portion of LP Drive it uses.

During oral argument, this panel asked LPHOA whether equitable relief, i.e., an equitable covenant, is available if there is an adequate remedy at law and whether LPHOA's remedy of enforcing the Wapiti Way RMA was an adequate remedy. After oral argument and pursuant to RAP 12.1, this court requested supplemental briefing from

LPHOA on that question and informed White Wave that it may, but need not, file a response.

## ANALYSIS

*Standard of Review*

We review summary judgment orders de novo and perform the same inquiry as the trial court. *Borton & Sons, Inc. v. Burbank Props., LLC*, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). Summary judgment is appropriate when there are no disputed genuine material facts and the prevailing party is entitled to judgment as a matter of law. CR 56(c).

If the moving party, here the HOA, met its initial burden and showed there were no disputed material facts, White Wave had to identify specific disputed facts indicating a genuine issue for trial. CR 56(e). "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). We consider all facts and reasonable inferences in a light most favorable to the nonmoving party—here, White Wave. *Galassi v. Lowe's Home Ctrs., LLC*, 4 Wn.3d 425, 434, 565 P.3d 116 (2025).

*The distinction between real covenants and equitable covenants*

"Property owners have a right in equity to enforce restrictive covenants."

*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383

(1994). Equitable remedies are an extraordinary form of relief. *Sorenson v. Pyeatt*, 158

Wn.2d 523, 531, 146 P.3d 1172 (2006). A court may only grant equitable relief when a

party shows they are entitled to relief and the remedy at law is inadequate. *Id*.

Today, a covenant typically refers to promises related to real property, created in

conveyances or other legal instruments. *Hollis v. Garwall, Inc*., 137 Wn.2d 683, 690,

974 P.2d 836 (1999). The Washington Supreme Court has established that a plat satisfies

this requirement if the plat supports the imposition of a restrictive covenant. *Id*. at 691-

93. There are two kinds of covenants that run with the land, real covenants and equitable

covenants. *Id*. at 691.

If the enforceability of a covenant relies on actual or constructive notice of a

restriction, rather than its inclusion in a deed, it is generally considered an equitable

restriction. *Id*. In its arguments to the trial court, LPHOA did not identify which type of

covenant it sought to enforce against White Wave. Because LP's RMA is not set forth in

White Wave's deed, the covenant it attempts to enforce against White Wave is an

equitable covenant.

9

We now address the two issues White Wave raises on appeal so as to determine whether the issue we raised during oral argument should be considered to properly determine the case.

1.    THE STATUTE OF FRAUDS DOES NOT PREVENT LP FROM ENFORCING ITS RMA AGAINST WHITE WAVE

White Wave first argues that LP may not enforce its RMA against it because it does not comply with the statute of frauds.  The HOA counters that its RMA satisfies the statute of frauds.  We disagree with both parties.

Washington requires that every conveyance or encumbrance of real property must be by deed and the deed must be in writing, signed by the party bound, and acknowledged.  RCW 64.04.010, .020.  The deed must also contain a sufficient description of the land.  *Key Design, Inc. v. Moser*, 138 Wn.2d 875, 881, 983 P.2d 653 (1999).  Here, because the legal description of the properties bound by LP's RMA does not include the property that later became White Wave's Lot 3, LP's RMA does not satisfy the statute of frauds against that property.

But our Supreme Court has held that "the statute of frauds is no barrier, at least when there is some writing, such as a plat, that supports the imposition of the burden" because "an equitable servitude may be implied." *Riverview Cmty. Grp. v. Spencer &*

10

*Livingston*, 181 Wn.2d 888, 898, 337 P.3d 1076 (2014). This brings us to White Wave's second argument.

2.      LP MAY NOT ENFORCE ITS RMA AGAINST WHITE WAVE AS AN EQUITABLE COVENANT

A binding equitable covenant exists when there is: "(1) a promise, in writing, which is enforceable between the original parties; (2) which touches and concerns the land or which the parties intend to bind successors; and (3) which is sought to be enforced by an original party or a successor, against an original party or successor in possession; (4) who has notice of the covenant." *Hollis*, 137 Wn.2d at 691.

White Wave argues that LP's RMA fails to satisfy the first three required elements. We mostly agree.

We apply the rules of contract interpretation when interpreting restrictive covenants. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). "[O]ur primary objective in contract interpretation is determining the drafter's intent." *Id*. at 250. Interpretation of a covenant is a question of law, but the drafter's intent is a question of fact. *Id*. If reasonable minds could reach only one conclusion, the drafter's intent may be determined as a matter of law. *Id*.

"We examine the language of the restrictive covenant and consider the instrument in its entirety." *Id*. Restrictive covenants, like contracts, must be definite enough to

11

determine, with at least a reasonable degree of certainty, the nature and extent of the obligation that has been assumed. *Hansen v. Transworld Wireless TV-Spokane, Inc.*, 111 Wn. App. 361, 376-77, 44 P.3d 929 (2002) (applying rule to contracts).

LP's RMA provides a legal description of the property it affects. It is undisputed that the RMA's legal description affects only the property in LP's subdivision and that White Wave's Lot 3 is not in LP's subdivision.

If one was to carefully examine the 2010 short plat—the plat LP relies on for creation of an equitable covenant—one would notice a notation on the plat that references an RMA by its recording number. Examination of that RMA would reveal that it is LP's RMA and that White Wave's Lot 3 is not bound by the RMA because the legal description of the property the RMA affects does not include Lot 3. This means that the RMA's promise does not touch and concern Lot 3, and White Wave is not a successor to an original party of the RMA's promise. Because LPHOA cannot satisfy the second and third elements of an equitable covenant, that theory does not permit it to enforce its RMA against that lot.[1]

---

[1] If White Wave was not required by the Wapiti Way RMA to pay LP for road maintenance for the portion of LP Drive it uses, the doctrine of unjust enrichment likely would require the same result. *See Nwauzor v. The GEO Group, Inc.*, 2 Wn.3d 505, 525, 540 P.3d 93 (2023) (explaining that unjust enrichment is rooted in notions of fairness and justice, and listing its three required elements).

We conclude the trial court erred in granting LPHOA an equitable covenant enforcing its RMA against White Wave's Lot 3. Because we reverse the trial court on this basis, we need not address the issue we raised during oral argument.

Reversed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Staab, C.J.                                            Murphy, J.